# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TERESA L., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, <br> COMMISSIONER OF SOCIAL SECURITY <br><br> Defendant. | No. 21 CV 1775 <br><br> Magistrate Judge McShain |

## MEMORANDUM OPINION AND ORDER

Plaintiff Teresa L. appeals the Commissioner of Social Security's decision denying her application for benefits. For the following reasons, plaintiff's motion to reverse or remand [19] is denied, defendant's motion for summary judgment [22] is granted, and the decision denying the application for benefits is affirmed.[1]

## Background

In June 2018, plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging an onset date of March 2, 2018. [14-1] 23. The claim was denied initially and on reconsideration. [*Id.*]. Plaintiff requested a hearing, which was held by an administrative law judge (ALJ) in March 2020. [*Id.*] 45-78. In a decision dated April 22, 2020, the ALJ found that plaintiff was not disabled. [*Id.*] 23-37. The Appeals Council denied review in February 2021 [*id.*] 1-6, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff then appealed to this Court [1], and the Court has subject-matter jurisdiction over the appeal pursuant to 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's disability claim in accordance with the Social Security Administration's five-step sequential-evaluation process. At step one of her decision, the ALJ determined that plaintiff had not engaged in substantial gainful activity since her alleged onset date. [14-1] 26. At step two, the ALJ found that

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [14-1], which refer to the page numbers in the bottom right corner of each page.
[2] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [7, 10].

plaintiff suffered from two severe impairments: status post cerebral vascular accident or vascular insult to the brain and hypertension. [*Id.*] 26-27. At step three, the ALJ ruled that plaintiff's impairments did not meet or equal a listed impairment. [*Id.*] 27-28. Before turning to step four, the ALJ found that plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but that she was limited to only frequent balancing and no more than occasional concentrated exposure to hazards such as dangerous, moving machinery or unprotected heights. [*Id.*] 28-35. At step four, the ALJ determined that plaintiff could perform her past relevant work as a psychiatric aid. [*Id.*] 35-36. Although that finding meant that plaintiff was not disabled, the ALJ proceeded to step five and found that jobs existed in significant numbers in the national economy that plaintiff could perform: mail clerk (79,000 jobs nationally), routing clerk (40,000 jobs), and garment sorter (60,000 jobs). [*Id.*] 36-37.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

### A. Dr. Gephart's Opinion

Plaintiff first argues that the ALJ erred in evaluating the opinion of one of her treaters, Dr. Anandita Gephart. [19] 6-9. Dr. Gephart opined, *inter alia*, that plaintiff would constantly experience symptoms that would interfere with the attention and concentration needed to perform simple work-related tasks, could sit for only three hours during an eight-hour workday, would require unscheduled breaks, could never lift more than 10 pounds, and would be absent more than four times per month. *See* [14-1] 867-68. Plaintiff acknowledges that the ALJ rejected this opinion as unpersuasive because it was not supported by Dr. Gephart's own treatment records, but she faults the ALJ for not discussing whether it was consistent with other evidence in the record. [19] 7-9.

An ALJ "will not defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those

2

from a [claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). In deciding how persuasive a given opinion or finding is, the ALJ considers "supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict" the opinion or finding. *Victor F. v. Kijakazi*, No. 22 C 1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). "Supportability and consistency are the two most important factors." *Id.* "An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors." *Id.* "[A] detailed analysis is not required," but the ALJ must "give a reviewing court the bridge to connect the outcome to the record." *Id.* (internal quotation marks and brackets omitted).

The Court finds that the ALJ "minimally articulated" her reasons for rejecting Dr. Gephart's opinion and thus satisfied the "lax" standard for evaluating opinion evidence. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

To begin, plaintiff does not challenge the ALJ's finding that Gephart's opinion was not supported by–and, indeed, was contradicted by–her own treatment notes. *See* [14-1] 24 ("The treatment records by Dr. Gephart are in direct contrast to and in no way support her conclusions[.]"). Plaintiff is thus in the odd position of arguing that the ALJ should have given more weight to an opinion that was admittedly unsupported because it was supposedly consistent with other evidence in the record. In any event, the ALJ adequately considered whether Dr. Gephart's opinion was consistent with the broader record. The ALJ expressly stated that she found Dr. Gephart's opinion "unpersuasive" because "the record shows conservative treatment prior to the date last insured and does not support such extreme limitations." [*Id.*] 33. Besides the conservative nature of plaintiff's treatment (a characterization that plaintiff does not dispute), the ALJ considered additional evidence in "the record" that did "not support" the extreme limitations identified by Dr. Gephart. This included (1) evidence that CT scans of plaintiff's head in June 2018 and January 2020 were "unremarkable"; (2) the findings by consultative examiner Margaret Grano that plaintiff exhibited full strength (other than mild weakness in her left leg), demonstrated normal range of motion, and had no issues with her hands; and (3) the "more persuasive" opinion of state agency reviewer Dr. James Madison, who opined that plaintiff could work at all exertional levels and was capable of frequent balancing. *See* [*id.*] 30-32. It is true that the ALJ did not use the word "consistency" in evaluating Dr. Gephart's opinion, but "the ALJ [wa]s not required to follow a particular formula or incant magic words" to have her decision upheld. *Marcelina R. v. O'Malley*, No. 23-cv-181, 2024 WL 3581742, at *3 (N.D. Ill. Jul. 30, 2024). "[S]ocial-security adjudicators" in particular "are subject to only the most minimal of articulation requirements." *Warnell*, 97 F.4th at 1053. All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is

3

sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id.* at 1054 (internal quotation marks and brackets omitted). For the reasons just given, the Court finds that the ALJ has met that standard here.

B.  **Prior RFC Determination**

Plaintiff next argues that the ALJ should have adopted a decision made by a different ALJ in a separate disability case that plaintiff filed. [19] 10-11. In that case, the ALJ ruled that plaintiff was limited to light work and had manipulative and mental limitations, but also concluded that plaintiff was not disabled. *See* [14-1] 104-116. The ALJ in the present case declined to adopt the prior RFC determination, observing that the first case involved a different period of disability (March 16, 2013 through March 22, 2018) than this case (March 23, 2018 through December 31, 2018), and that the evidence from the latter period established that plaintiff could work at all exertional levels. *See* [*id.*] 35 ("Thus, the opinion from that prior decision is not supported or consistent with the treatment notes or records as discussed herein.").

The Court rejects plaintiff's argument. Most importantly, the Seventh Circuit has held that an RFC determination made in a previous disability case does not bind an ALJ who is considering a subsequent disability claim that involves a different time period. *See Penrod o/b/o Penrod v. Berryhill*, 900 F.3d 474, 477 (7th Cir. 2018) (rejecting identical argument because claimant "cites no authority–and we have found none–that requires an ALJ to use the same RFC that a different ALJ used in denying benefits for a prior period").[3] Second, although the RFC determination in the present case is materially less restrictive than the RFC determination from the prior case, plaintiff has not shown that the ALJ's finding that she could work at all exertional levels between March 23, 2018 and December 31, 2018 lacks substantial evidentiary support.

C.  **Other Challenges to the RFC Determination**

Plaintiff makes three final challenges to the RFC determination. She contends that the RFC determination is flawed because it contains no exertional limitations and no explanation of why the ALJ thought plaintiff could work at the medium and heavy exertional levels. [19] 9. But the ALJ explained at some length why she determined that "the objective record including the treatment notes discussed herein do not support [that] the claimant has exertional limitations" and why the evidence

---

[3] Given the holding in *Penrod*, the Court rejects plaintiff's invitation to apply Social Security Acquiescence Ruling A97-4(9). That ruling, which applies only to Social Security cases filed in the territorial jurisdiction of the U.S. Court of Appeals for the Ninth Circuit, specifies the circumstances in which an ALJ's findings from a prior disability claim will be given effect in a subsequent claim involving a different period. *See, e.g.*, *Mejia D. v. O'Malley*, Case No. 2:22-cv-7336-PD, 2024 WL 776580, at *3 (C.D. Cal. Feb. 26, 2024).

"only supports the postural and environmental limitations" that were included in the RFC. *See* [14-1] 33 (discussing, *inter alia*, plaintiff's controlled blood pressure, 20/20 vision, normal findings during physical examination, normal range of motion in all extremities, normal range of motion at cervical and thoracolumbar spine, full grip strength, slow but normal gait, and normal neurological examination). All of that was in addition to the ALJ's explanation of why she did not credit Dr. Gephart's opinion but did credit the opinion of Dr. Madison, who opined that plaintiff could work at any exertional level.

Plaintiff also contends that the ALJ erred by including no limitations relating to her vision impairment. [19] 9. The Court rejects this argument because the ALJ's decision contains a reasoned explanation, grounded in substantial evidence, for why the RFC determination included no vision-related limitations. The ALJ recognized that plaintiff's stroke caused "decreased vision when near reading and inability to move [her left eye] up, down, or from side to side[.]" [14-1] 31. But the ALJ also found that plaintiff had close to 20/20 vision in both eyes and was able to move her head and neck to accommodate the reduced visual field in her left eye. [*Id.*]. The ALJ also highlighted the lack of any evidence that plaintiff's "vision issues cause any vocationally relevant limits." [*Id.*].

Finally, plaintiff contends that the ALJ rejected all of the opinion evidence in the record and impermissibly "played doctor" to craft the RFC determination based on her lay interpretation of the evidence. [19] 7-8. The premise of this argument is false, as the ALJ expressly based the RFC determination on the opinion of Dr. Madison. Plaintiff has not challenged the ALJ's weighing of that opinion, so this argument provides no basis for a remand.

## Conclusion

Plaintiff's motion to reverse or remand [19] is denied, defendant's motion for summary judgment [22] is granted, and the decision denying the application for benefits is affirmed.

*Heather K. McShain*

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: September 4, 2024**